Thank you. My name is Kenneth Chackas. I'm the attorney for the debtor Christopher Boisaubin. And for the appellees, would Mr. Stephen Wallace note his appearance in the name of the parties for whom he is appearing? Yes, Your Honor. Stephen Wallace appearing for Marianist Province of the United States, Chaminade College Preparatory, and Father Martin Salma. Okay. Mr. Chackas, first, would you like to reserve time for rebuttal? Yes, Your Honor. I advise Ms. Harrison I'd like to reserve four minutes for rebuttal. Okay. Then please proceed with your argument. Thank you. May it please the court, as I said, my name is Ken Chackas. I represent the debtor in this matter. Before getting into the legal argument, I'd like to review in a few minutes on some of the important facts. My client has made a claim that while he was in high school in the early 1970s, he was sexually abused by one of the faculty members of his school. Shortly after the abuse, he repressed all memories of it until 2012. During that period of time, he twice sought bankruptcy court protection, first in Chicago in 1990, and then in St. Louis in 2009. Mr. Chackas, this is Judge Saladino. We have read the briefs, and so we're fairly familiar with the facts. If there's something that perhaps needs to be explained, that's great. But as I see it, we've got two issues here. One is, did the bankruptcy court err as a matter of law in including the abuse claims as property of the St. Louis estate? Do you agree with that? Yes. Then I see the second would be, did the bankruptcy court abuse its discretion in approving the settlement? Do you agree with that? Yes, I do. So why don't you go ahead and delve into the issue of property of the estate first? Fine. Thank you. It's our position that the debtor's sexual abuse claim never became an asset of the St. Louis bankruptcy. By operation of law, and I think all parties agree that when in the Chicago case, which was the first bankruptcy case in time, the trustee in that case filed a report of no distribution that closed the case in 2018. And according to Section 554C of the 11th United States Code, by operation of law, that closure of the case caused Mr. Boiseman's claim to be abandoned to the debtor. When that section was first enacted in 1978, it simply said that any property not to add that the property is abandoned to the debtor. That's the plain language of the statute that we're dealing with now, so that when the Illinois case was closed, the property was abandoned to the debtor. The court below relied on case law to determine that upon abandonment, the property reverts to the bankrupt non-protonque, so that he is considered to have owned it continuously. But I believe that that's an improper application of the non-protonque principle. In the case cited in my brief, and in a very recent United States Supreme Court case by respondents, the courts make clear that federal courts may issue non-protonque orders to reflect the reality of what has occurred. But in the words of the Supreme Court, those orders are not some Orwellian vehicle for revisionist history, creating facts that did not come to pass. Perhaps you could help me understand what the difference is between the former law, which just said it was abandoned, and the current law that says it's abandoned to the debtor. Because if it's abandoned under the former law, who else would it be abandoned to, if not the debtor? Well, it left it open under the prior law, and it could go to other parties who had an interest, and that the bankruptcy court could weigh the interest of who the property should be abandoned to. What the trial court here did that was not what in fact occurred was to say the Illinois bankruptcy never occurred. In the court's order, Judge Redlin stated the law operates to act as though the debtor held the interest continuously as though the Illinois bankruptcy never occurred. The abandonment caused the interest to revert as though it were 1990 again. The court views the Illinois bankruptcy to have never happened. But in the Roman Catholic... This is Judge Stamberg. With regard to a non-protunct order is revisionist history. Here what we have is a statute indicates that it's abandoned, and the effect of that is that it does go back to the debtor. But doesn't the debtor always have an interest in that claim regardless of what happens in the bankruptcy case? Don't they always have a contingent or originary interest? Well, that was raised by a respondent under section 541 of the broad section that talks about the property of the estate. There's a potential future interest may be a part of the estate unless the future interest is subject to the absolute discretion of another party. That was a case in this court, the bankruptcy appellate panel in 2013 in Seaver v. Klein Swanson relied on the in-rate vote case of the 8th Circuit to state that the debtor's potential future interest in property that is subject to absolute discretion of another party is not part of the bankruptcy estate. And here, when the debtor filed the St. Louis bankruptcy case, the Illinois trustee was the party or the Illinois court had full control over his sex abuse claim. Mr. Chuckas, this is Judge Saladino again. But isn't the problem with that argument the fact that those cases you referenced, didn't they deal with the possibility of getting a bonus, the hope or prayer that a bonus might be awarded? Well, that one did. That was the Klein Swanson case. Okay, so let me go on then. So in this case, there was already a claim. And in fact, it had been filed in state court. So the claim existed. It's not a hope and a prayer that there's a claim. There is a claim. So either it was going to be an asset of the Chicago bankruptcy case, or it was going to be abandoned to the debtor. There's no in-between in this case. Is that right? Well, I'm not sure exactly what you're saying. I think that it would be an asset of the Illinois bankruptcy case. And the at the time... Well, just so you know, what I'm saying is the bonus may never exist. The bonus may never get awarded. It's the point. The similarity is that the debtor had done all of the work pre-petition and would have gotten a bonus if it had been awarded by the employer. But it hadn't been awarded. That is the point that I'm trying to make is the bonus only exists once the employer decides, yes, I'm going to give out bonuses. In this case, the asset is an existing claim. It is not a hope or a prayer. It's a claim that actually exists. The debtor here didn't have any ownership of it because it was in the exclusive authority of the Illinois... No, that I understand. It was either going to be there or here, one of the two places. Whereas the bonus was not necessarily going to be one of those two places because it may never exist at all. My point is that at the time of the filing of the St. Louis case, the debtor had no power to do anything with it because it was subject to the Illinois case. Until the Illinois case acted on it and could... Owned it, but could have abandoned it to the also the... In the Illinois case, the St. Louis trustee filed a motion trying to get the court to abandon it to the St. Louis case, but the Illinois bankruptcy court would not do that. And the trustee, the St. Louis trustee didn't take any steps after the case was reopened and the court denied his request to have the case abandoned to the St. Louis estate. And then later when the Illinois trustee said, I'll just close the case, that the St. Louis trustee again had the opportunity to seek relief from the Illinois court, but didn't. Okay. May I interrupt Mr. Chackas? This is Cindy Harrison and you have four minutes left. All right. Well, let me take a little bit of my time then for rebuttal to say that even if there was a residual interest that gave the St. Louis court some authority in determining the error by applying it mechanically without balancing the equities. And if it didn't do it at all, if you just look at the order of the St. Louis bankruptcy judge, he applied it as it was an automatic rule that it had to be abandoned without considering the equities of to whom it should be abandoned. So that I'd like to reserve the rest of my time. Okay. Thank you. Mr. Wallace, please present your argument. Yes, Your Honor. May it please the court. As the court recognized, there are two issues before the court today. One, whether or not this particular property was property of the estate or is property of the estate in the St. Louis case. And number two, did Judge Renlund abuse his discretion in approving the settlement? On the first issue, the answer is decidedly yes. It was property of the estate. The scope of estate property is defined in 541 is so inclusive that it couldn't possibly have excluded or exempted this particular piece of property. The debtor's admissions that this is property of the estate, not withstanding, it's clear that just on the law, it is property of the estate. First of all, as to the reversionary interest, uh, this is no different than if I deeded a piece of property to Judge Nail. And, um, and in the deed, I said, if Judge Nail ever uses this property as a bowling alley, it will revert to me. Um, yes, it's up to Judge Nail's discretion. It's within his discretion, whether or not he uses the property as a bowling alley. But if he does, it reverts to me. I still have a reversionary interest, even ever, even if it's ever so slight, that is enough to render this property of the estate. And it's quite unlike a bonus. Whereas I think your honor pointed out the property doesn't even exist until the employer says it exists. So it's clearly property of the estate. Secondly, um, in terms of the effect of abandonment, the rule that, uh, counsel and, and, uh, Mr. Boisivan propose would require the court to, in each instance with each particular piece of property that's abandoned, make a determination as to when temporarily the property had been abandoned. That would be a decidedly unworkable rule because the court would be completely inundated with requests to determine when was this property abandoned? When was this property abandoned? The rule is, and it has been, and it's not been challenged is that property is abandoned to the debtor as of, as though it had never been property of the estate to begin with. So it's abandoned effective as of the commencement of the case. So on the, on those issues, your honor, clearly this is property of the estate. The test, the Supreme court has articulated, I think, which is bought embodied in section five 41. It's whether the interest is sufficiently rooted in the debtors pre-bankruptcy past to, to, to, to draw it into the estate here. There's no question. That is the case. Uh, secondly, judge Wendland did not abuse his discretion in approving this resolution. He methodically applied the four factors identified by the eight sort circuit and low filed, uh, the complexity of the case, the likelihood of success on the merits, uh, the ultimate interest of creditors, uh, and your honor, all four factors 0.2, uh, are indicated that the decision was correct. Number one, the case is complex. It has complexities. These are allegations that date back some 50 years or nearly 50 years. It's going to test the memory of witnesses from the early 1970s. It will require expert testimony as to whether or not the debtors, um, the debtors recall is correct or whether or not it was when it, when the recall occurred, if it ever occurred, um, your honor creditors, no one, no one opposed, opposed the settlement. No creditors objected to it. And, uh, your honor, for that reason, uh, judge Wendland did not abuse his discretion in approving the settlement. Mr. Wallace, this is judge Saladino. Your point about no creditors objecting, um, quite frankly, they wouldn't object. Would they, since it results in them getting paid in full? It wouldn't. And that's why it's important that the debtor did object because he's the only one left having an interest in that settlement, right? If in fact, your honor, he has an interest in the estate and not to the debtor. Certainly the debtor has a right to object if in fact there's a surplus in this, in this case, there is no surplus or if there is, it's, it's a de minimis surplus at best because of the administrative expenses and the claims that have been filed. Uh, so, and the test is in fact, the interest of creditors, uh, credit, as I indicated, no in the analysis under low filed and under in determining under rule 19, whether or not the settlement is appropriate. Um, Mr. Wallace, this is judge chamber. Can you, can you address the issue with regard to the, uh, motion to seal? I will, your honor. And I think, and I think we need to consider that the motion to seal in connection with, uh, with the interrelation investments case, um, and also low vault, you know, um, judge Renlin initially invited the parties to submit documents under seal that he could consider in connection with his analysis of the, of the proposed settlement. He ultimately determined he didn't need to do that. And he said so in his opinion, in fact, there were on two instances, the parties were before the court with what was essentially a substantial, substantially the same settlement. And, uh, so the, so in, on two occasions, no more, no less than two occasions, the parties had an opportunity to brief judge Renlin as to the facts and circumstances and the merits of the case. And so I think it was appropriate for judge Renlin to have determined that he didn't need to see the documents under seal in order to evaluate whether or not this settlement was, was something that, uh, only, uh, that no reasonable person could object to. Um, he, he did invite it your honor, but it wasn't necessary. And he said so that it wasn't necessary. Your honor, all the other, the rest of my arguments are set forth in the brief. I don't want to, I don't want to regurgitate grounded up. It's already been covered in the briefs unless you're, uh, the court has any further questions. Um, I would conclude by arguing to either of the other judges. Have any more questions for the appellee? I do not judge. I do not judge mail. Okay. Thank you very much. Thank you. Your honors. Okay. Mr. Mr. Jack. Assuming that the, uh, St. Louis court did have some authority to, um, deal with the asset. Um, when it did it, it had to consider, uh, the, the, the equities, as I said, in deciding whether to apply the non-pro time doctrine. Uh, Mr. Jack, this is, this is just Sandberg. Um, when you are addressing the equities, um, it would seem to me that you would need to, you need to address the, the equity, if you will, that this was, this was caused by the, uh, by the debtors, uh, own making for failing to disclose, um, the causes of action, um, either in the early Illinois case or in the later St. Louis case. How, please address that. Thank you. Yes, that, that was, that was addressed before judge Rendlin and, um, the debtor had no memory of the sexual abuse during the time of his two bankruptcies. Um, that's, that's the basis for, um, the getting around the statute of limitations in the state court case that the Missouri courts recognize that if a, due to the trauma of abuse, a person, uh, forgets about it, um, then the cause of action is told until the statute of limitations is told until the memory returns. So during the time of the two bankruptcies, um, his failure to, uh, schedule it as an asset is completely innocent because he had no memory of it. Um, and then this judge never However, he didn't, he didn't go back and reopen his cases and, um, amend until at least a couple of years, uh, after, um, he filed the state court cases. Isn't that correct? Correct. And that was also discussed. And, um, as his lawyer throughout the time, I explained to judge Rendlin that, um, I was, had no sophisticated knowledge of bankruptcy law, knew in general, there was some obligation to deal with these at some time, um, but didn't know. And I don't believe there is any time limit for, um, reopening a case that's been closed. And also the Marianists were informed, uh, very quickly after the lawsuit was filed in response to their first interrogatories, we informed the, uh, the Marianist parties of the two bankruptcies. Um, and that was discussed again during the plaintiff's deposition, but the case proceeded for those three years without objection from the Marianists. Both parties engaged in significant discovery, uh, hiring experts. Um, and then as soon as it was raised in their motion for summary judgment in 2017, as a matter of standing, I delved further into the law and, um, opened up the two bankruptcy cases. Okay, Mr. Chackas. So, and it was also admitted. Mr. Chackas, this is Cindy Harrison. Your time is up. All right. May I continue the answer, Your Honor? Finish the answer, please. Thank you. Um, during the argument, um, uh, I can't remember which one. We've had, there are three significant arguments on these issues. Um, but it was clear that the debtor was not gaining the system, did not gain any advantage over the Marianists by that delay in, uh, during the litigation. Both the Marianists and the debtor were able to engage in discovery and, um, I, there was an explicit admission on the record by the, uh, attorneys for the Marianists and the trustee that the debtor, the debtor would not have been in any better position, um, had he disclosed it earlier. So Judge, Judge, um, Renlund did fully explore the several briefs about it. There was a whole hearing on it and the judge never made any finding that the debtor engaged in any dishonesty or bad faith or should be stopped because of the delay. Okay. Um, I think, uh, I think the answer has been sufficient. Um, I want to thank everyone. Um, the court will now be in recess until further notice. Thank you all. Thank you.